UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| TIMOTHY STRICKER, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. C-12-143 |
| § | |
| RICK THALER, § | |
| § | |
| Respondent. § | |

## ORDER ADOPTING
## MEMORANDUM AND RECOMMENDATION TO
## GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Respondent's Motion for Summary Judgment (D.E. 17). On September 17, 2012, United States Magistrate Judge Brian L. Owsley issued a Memorandum and Recommendation (D.E. 19), recommending that Respondent's Motion for Summary Judgment be granted. Petitioner filed his Objections (D.E. 20) on October 9, 2012.

### I.  LIMITATIONS

First, Petitioner objects to the conclusion that his Petition is barred by limitations. He relies on the discovery rule and/or equitable tolling to permit his *habeas corpus* proceeding within one year of when he claims he first learned of the alleged double jeopardy violation and related ineffective assistance of counsel claim. 28 U.S.C. § 2244(d)(1)(D) (discovery rule for *habeas* petitions). The substance of his claim is that the two counts on which he was charged are essentially two charges for the same crime in violation of the protection against double jeopardy. U.S. CONST. AMEND. V.

He argues that those claims arose only after the terms underlying his current incarceration were altered by a 2007 Judgment *Nunc Pro Tunc*. At the time that judgment was issued, he had not received notice and an opportunity to be heard on the matter, allegedly making the use of the *nunc pro tunc* procedure improper. He claims the right to make his double jeopardy challenges in this proceeding because he did not learn about the Judgment *Nunc Pro Tunc* until 2010 and could not have challenged its terms at the time of the original 2002 Judgment or in 2007.

### A. The Procedural Issues Regarding the Judgment *Nunc Pro Tunc* Do Not Support Petitioner's Claims.

Petitioner was indicted on two counts for conduct occurring on or about July 27, 2002: (1) sexual assault of a child and (2) indecency with a child. D.E. 15-7, pp. 43-44. On October 11, 2002, he signed a Plea Agreement, agreeing to plead guilty to both charges and waive a number of rights in exchange for deferred adjudication and a sentence of 10 years of community supervision, along with a $1,000 fine. D.E. 15-4, pp. 63-64. In connection with that plea agreement, he signed a Judicial Confession and Stipulation that both charges were true. D.E. 15-4, pp. 65-66.

As second degree felonies, the charges each carried penalties of 2-20 years of incarceration and a fine not to exceed $10,000. Tex. Penal Code §§ 21.11, 22.011. The Court accepted the plea agreement, found that the evidence substantiated the Petitioner's guilt, deferred the proceedings without an adjudication of guilt, and imposed the agreed-upon 10 years of community supervision and fine. D.E. 15-5, pp. 12-13. There is no mention on the face of the 2002 judgment of the charge of indecency with a child.

However, both charges are listed on the supplementary order that sets out the Conditions of Community Supervision and which is signed by both the trial judge and the Petitioner and is incorporated by reference into the judgment. D.E. 15-5, pp. 14-18. Petitioner did not appeal this Judgment.

On August 16, 2006 the State filed a Motion to Revoke Probation reciting that Petitioner had committed an offense of impersonating a security officer and unlawfully carrying a weapon. D.E. 15-5, pp. 20-22. As a result, the Court issued its Order Imposing Sanctions on Defendant and Continuing or Modifying Probation on October 9, 2006, requiring Petitioner to be incarcerated pending an evaluation by Mental Health and Mental Retardation services. D.E. 15-5, p. 36.

Not long thereafter, on March 13, 2007, the Court issued its Judgment *Nunc Pro Tunc* revising the original Judgment to include both charges but otherwise maintaining the same deferred adjudication and terms regarding community supervision. D.E. 15-3, pp. 6-9. Thereafter, the state filed another Motion to Revoke against the Petitioner at which time probation was revoked and Petitioner was sentenced to twelve years of incarceration on each count, to run concurrently.

The procedure for entering a *nunc pro tunc* judgment has been construed to require a hearing at which evidence must be adduced in the presence of the defendant proving that the events in question actually occurred. *Jones v. State*, 795 S.W.2d 199, 202 n. 7 (Tex. Cr. App. 1990) (contrasting the *nunc pro tunc* procedure with clerical corrections that can be made without notice by the trial court within the same term). The State Records available to this Court do not reflect any motion triggering the issuance of

the Judgment *Nunc Pro Tunc*. There is no indication that Petitioner was served with any document indicating the Court's intention to issue a judgment *nunc pro tunc*. Neither do the State Records reflect that Petitioner was present for proof that the events in question actually occurred or that he was even served with the 2007 Judgment *Nunc Pro Tunc* after it was issued.

Even though the Texas Court of Criminal Appeals has prescribed a notice and hearing procedure, it has also acknowledged that the law does not require a useless act in this regard. *Homan v. Hughes*, 708 S.W.2d 449, 454-55 (Tex. Crim. App. 1986). If the Petitioner cannot demonstrate harm from being denied the ability to participate in the *nunc pro tunc* procedure, then he cannot complain of it. As demonstrated below, the judgment *nunc pro tunc* merely corrected a mistake in the drafting of the judgment, as evidenced by the rest of the record, including other matters incorporated by reference into—and made a part of—the original 2002 Judgment. Moreover, Petitioner has not identified any inaccuracy in the record or any other reason that the *nunc pro tunc* procedure should not have been used to correct the clerical mistake. Thus there was no harm in failing to provide Petitioner with notice and an opportunity to be heard.

### B. The Judgment *Nunc Pro Tunc* Was Proper and Was Not a Material Change.

A judgment *nunc pro tunc*, by definition, is not supposed to present any substantive change in what transpired at the time the original judgment was entered. *Blanton v. State*, 369 S.W.3d 894, 897-98 (Tex. Crim. App. 2012). Its purpose is to reconcile the judgment pronounced in open court with the written judgment of record—to

correct a clerical error and not a change in judicial reasoning.  *Id*.  That does not mean, however, that what purports to be a judgment *nunc pro tunc* is, indeed, a proper *nunc pro tunc* ruling.  To provide the foundation for Petitioner's claim, the Judgment *Nunc Pro Tunc* must have made a material substantive change.

The state court record (D.E. 15) does not contain a transcript of the original plea colloquy or oral rendition of judgment.  However, it does include a number of documents, including the trial court's admonishments on a plea of guilty (D.E. 15-4, pp. 49-51), admonishments on range of punishment (D.E. 15-4, pp. 52-54), the defendant's understanding of admonishments (D.E. 15-4, pp. 55-56), supplemental admonitions regarding sex offender registration requirements (D.E. 15-4, pp. 61-62), plea agreement (D.E. 15-4, pp. 63-64), and the confession and stipulation (D.E. 15-4, pp. 65-66), each of which references both charges.

Even more importantly, the supplemental order regarding conditions of community supervision, which was incorporated into the judgment and which was signed by Petitioner (in addition to the trial judge), specifically lists both counts as the basis for the order (D.E. 15-5, p. 14).  While the face of the judgment only recites the first count, it incorporates by reference these other matters, including acceptance of the confession of guilt and the plea agreement, which reference both counts.  It is the entirety of these matters that make up the judgment.  Tex. Code Crim. Proc. Ann. art. 42.01.  The Judgment *Nunc Pro Tunc* did not materially change the judgment.  It simply made explicit all of the terms that were originally incorporated by reference.

### C. Petitioner Was Not Denied the Ability to Raise His Double Jeopardy Arguments.

The remaining question is whether something other than the *nunc pro tunc* procedure can be said to have deprived Petitioner of his ability to make his double jeopardy and ineffective assistance claims as a result of the original judgment. Respondent correctly asserts that a judgment of deferred adjudication triggers Petitioner's obligation to file a direct appeal or petition for writ of *habeas corpus*. Tex. Code Crim. Pro. Ann. Art. 42.12 § 23(b) (the right to a direct appeal arises at time defendant is placed on community supervision; upon revocation he may appeal the propriety of the revocation); *Caldwell v. Dretke*, 429 F.3d 521, 528-29 (5th Cir. 2005) (deferred adjudication is a judgment for purposes of 28 U.S.C. § 2244), *cert. denied*, *Beck v. Quarterman*, 549 U.S. 993, 127 S.Ct. 548 (2006); *Burrell v. State*, 492 S.W.2d 482, 483 (Tex. Crim. App. 1973) (validity of original conviction cannot be raised for first time on appeal from a revocation order).

The discovery rule of § 2244(d)(1)(D) only extends the trigger date for limitations to the date of discovery of the "factual predicate" of the claim through the exercise of due diligence. As set out above, Petitioner was well aware that he had been charged with, and found guilty of, both counts as a result of his plea agreement and confession. If he believed that the two counts amounted to double jeopardy and that his trial counsel failed to properly address that constitutional violation, he had a duty to raise it within the limitations period triggered by the original judgment. The factual predicate was already before him.

Petitioner has further failed to provide any summary judgment evidence to support his claim to the benefit of the discovery rule or equitable tolling.[1] His arguments are conclusory or related to the *nunc pro tunc* procedure already considered and rejected. He submitted no affidavits and he did not supply any unsworn declarations under penalty of perjury to support his arguments.

### D. Conclusion

Petitioner has failed to controvert Respondent's proof that the one-year limitations period began to run from the date of the original judgment, October 28, 2002, and expired long before he filed this action. Limitations thus bars any complaint based on alleged double jeopardy and ineffective assistance of *trial* counsel in connection with the 2002 Judgment as corrected by the 2007 Judgment *Nunc Pro Tunc*. Petitioner's first objection is **OVERRULED**.

## II. FAILURE TO EXHAUST STATE REMEDIES

Second, Petitioner objects to the Magistrate Judge's conclusion that failure to exhaust administrative remedies bars consideration of his claims based on alleged ineffective assistance of *appellate* counsel with respect to the revocation proceedings in 2010. Petitioner alleges that his appellate counsel rendered ineffective assistance by inducing him to dismiss his appeal of the 2010 order revoking his probation and adjudicating Petitioner on both counts, based on Petitioner's original plea of guilty. More specifically, Petitioner complains that his appellate counsel did not observe the *Anders* procedure, which would have allowed Petitioner to pursue his appeal *pro se*.

---

[1] His summary judgment response (D.E. 18) and his objections to the memorandum and recommendation (D.E. 20) are both presented without affidavit or declaration in support.

In his December 2010 state *habeas corpus* petition, Petitioner complained of defects in the evidence underlying the 2002 judgment, misjoinder of the two counts against him, and ineffective assistance of *trial* counsel.  D.E. 15-7, pp. 12-16.  One reference to his appellate counsel was crossed out.  D.E. 15-7, p. 15.  No issue regarding the conduct of his appellate counsel was addressed or adjudicated in this first habeas corpus proceeding arising from the 2010 probation revocation.  D.E. 15-7.

In his November 17, 2011 state *habeas corpus* petition, Petitioner complains of his appellate counsel for the first time.  D.E. 15-9.  That petition was denied as a subsequent application, prohibited by Tex. Code Crim. Proc. Art. 11.07, § 4(a)-(c).  The Petitioner's procedural default prevents Petitioner from being able to satisfy the exhaustion of state remedies requirement.  *See generally*, *Greer v. Thaler*, 380 Fed. Appx. 373, 385, 2010 WL 1976620, *11 (5th Cir. 2010) (relying on *Williams v. Thaler*, 602 F.3d 291, 305 (5th Cir. 2010)).

Petitioner's explanation of his objection to this part of the Magistrate Judge's recommendation addresses only the issue of his presentation of *trial* counsel's ineffectiveness.  That claim was recommended to be dismissed as barred by limitations, not for failure to exhaust remedies.  The Petitioner does not address how his successive state *habeas* application, dismissed on procedural grounds, satisfies the exhaustion requirement.  Petitioner's second objection is **OVERRULED**.

### III.  FAILURE TO PROVIDE PETITIONER WITH COPY OF RECORD

Petitioner complains that he was not provided with a copy of the record submitted by Respondent.  Petitioner has not demonstrated that he made any request for the record

or that his request was denied. He has not stated the purpose for which he seeks a copy and he has not explained the prejudice he has suffered in its absence. Neither has he provided any authority for the proposition that he is entitled to be furnished with a copy of the record. Instead, the Fifth Circuit has held that the government is not required to provide copies to petitioners who have no stated reason—even when they are indigent. *E.g., Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975) (*per curiam*). Petitioner's general objection is **OVERRULED**.

## CONCLUSION

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's Memorandum and Recommendation, as well as Petitioner's Objections, and all other relevant documents in the record, and having made a *de novo* disposition of the portions of the Magistrate Judge's Memorandum and Recommendation to which objections were specifically directed, the Court **OVERRULES** Petitioner's Objections and **ADOPTS** as its own the findings and conclusions of the Magistrate Judge. Accordingly, Respondent's Motion for Summary Judgment (D.E. 17) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**. Petitioner's request for a Certificate of Appealability (D.E. 20, p. 5) is **DENIED**.

ORDERED this 19th day of October, 2012.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE